**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANGELA BROWN o/b/o L.B.,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **NO.   15-1024** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN, ACTING** | : | |
| **COMMISSIONER of the SOCIAL** | : | |
| **SECURITY ADMINISTRATION,** | : | |
| | : | |
| **Defendant.** | : | |

**AMENDED MEMORANDUM[1]**

**KEARNEY, J.**                                                                                    **June 16, 2016**

On August 15, 2013, an Administrative Law Judge with the Commissioner of Social Security denied childhood disability benefits to Claimant, L.B. who alleged disability based on his diagnoses of asthma and ADHD.   The United States Magistrate Judge's May 18, 2016 extensive Report and Recommendation concurred with the ALJ's denial and we incorporate the Magistrate Judge's detailed factual findings.   Our findings today arise from one area of less than complete analysis by the ALJ.   Having reviewed Plaintiff's multiple objections, we remand to the Commissioner in the accompanying Order consistent with this Memorandum. The ALJ will not revisit the Plaintiff's remaining objections which are overruled but must now provide a more complete examination of the child's limitations in the domain of "attending and completing tasks" consistent with this Memorandum.

---

[1] We amend our June 14, 2016 Memorandum (ECF Doc. No. 27) only to correct a typographical error in the second paragraph of our Analysis consistent with the remainder of our Memorandum and Order.

## I.      Standard of review

In reviewing the Commissioner's decision, we are limited to determining whether "substantial evidence" supports her decision.[1]  "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2]  We may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record.[3]  In other words, even if we, acting *de novo*, would have decided the case differently, the Commissioner's decision must be affirmed when supported by substantial evidence.[4]  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[5]

Where a party makes a timely and specific objection to a portion of a Magistrate Judge's report and recommendation, we are obliged to engage in *de novo* review of only those issues raised by objection.[6]  We may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report.[7]  We may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations.[8]

## II.      Analysis

To functionally equal one of the Listing of Impairments necessary for a finding of disability in Appendix 1 to 20 C.F.R. Par 404, Subpt. P (the "Listings"), a child disability claimant must have impairments imposing marked limitations in at least two, or extreme limitations in at least one, of the six domains of functioning: (1) acquiring and using information;

(2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) physical health and well-being.[9]  The ALJ concluded L.B. had a single marked limitation in the domain of interacting and relating with others, but found "less than marked" limitations in the other five areas of functioning. As a result, the ALJ held L.B. had not met the requisite standard for functional equivalence to a Listing and not entitled to a disability finding.

Plaintiff, on behalf of her son L.B., now challenges the ALJ's determination.   Based on our standard of review of the ALJ's decision and the Magistrate Judge's Report, we find substantial evidence supporting much of the ALJ's decision but we do not find substantial evidence supports the ALJ's imposing a less than marked limitation in the domain of attending and completing tasks, requiring remand on this issue.

For the domain of "Attending and Completing Tasks," Social Security rules state:

When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.[10]

Examples of limited functioning in this domain include: (1) being easily startled, distracted, or overreactive to sounds, sights, movements, or touch; (2) being slow to focus on, or failing to complete activities of interest to you; (3) becoming repeatedly sidetracked from activities or frequently interrupting others; (4) becoming easily frustrated and giving up on tasks;

and (5) requiring extra supervision to remain engaged in an activity.[11]

L.B.'s treating doctor, Dr. Hardas, stated L.B. had a marked limitation in this domain. The ALJ rejected Dr. Hardas' assessment:

> Although his mother reported and treatment notes indicated difficulty staying on task due to hyperactivity, he has improved with treatment and medication management and was promoted from Kindergarten to the first grade level . . . . Claimant began at community council in April 2012, where he was diagnosed with ADHD disruptive behavior disorder, and rule out ODD . . . . His GAF has been 52 at all relevant times . . . . The record shows that claimant plays on electronic games for extended periods of time . . . suggesting an ability to sustain focus when he is motivated to do so. **The finding of less than marked limitation in the domain of attending and completing tasks is consistent with school functioning, with his ability to focus on games, and with the GAF score consistently assigned by his treating psychiatrist.**[12]

We find the three pieces of evidence relied upon by the ALJ could constitute substantial evidence for a less than marked limitation in this domain.   First, as to the ALJ's comments about L.B.'s ability to concentrate on video games,[13] the record contains sparse and ambiguous notations.   At his March 23, 2013 therapy session, L.B. indicated he "enjoys playing video games, riding his scooter and playing outside."[14]   At his May 20, 2013 therapy session, L.B. remarked "he was tired because he was playing Xbox video games late at night."[15]   Finally, at the July 23, 2013 administrative hearing, L.B.'s mother stated L.B. used to spend maybe "a couple hours a day" playing on the Wii, but that it had broken a couple of months prior.[16]   The ALJ asked no further questions to develop the frequency with which L.B. played video games, the depth of his attention to the video games, and whether he played for hours at a time, or broken up over several, shorter sessions.   In addition, the record is devoid of evidence from any medical professional showing L.B.'s ability to play video games suggests an ability to concentrate   "when he is motivated."

"[A]n ALJ may not make speculative conclusions without any supporting evidence."[17] Further, an ALJ "may not employ her own expertise against that of a physician who presents competent medical evidence."[18]   The ALJ improperly interjected his lay opinion, based on a sparse and incomplete record, to conclude use of video games exhibits an ability to concentrate. He may be correct, but he cites no evidence for his finding.   As the ALJ had no foundation for this conclusion, we decline to find this factor to be substantial evidence for the less than marked limitation in the domain of attending and completing tasks.

The second piece of evidence cited by the ALJ consists of the collection of L.B.'s GAF scores.   Our Court of Appeals instructs, "[a] GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings."[19]   The latest edition of the *Diagnostic and Statistical Manual of Mental Disorders, DSM-5* abandoned the GAF scale as a measurement tool.[20]   The Social Security Administration permits ALJs to use GAF ratings as opinion evidence in claims of mental disorders, but instructs a "GAF score is never dispositive of impairment severity," and an ALJ should not "give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence."[21]   Ultimately, "[u]nless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis."[22]

The ALJ relied heavily on the GAF score to discount the marked limitations imposed by current treating physician, Dr. Hardas, in the area of attending and completing tasks.   The ALJ remarked Dr. Hardas "consistently assigned claimant a GAF score of 52, which refers to moderate symptoms," and the GAF score "remained consistent over time, thus presenting a more

reliable assessment of functioning."[23]   In doing so, the ALJ failed to note the GAF score of 52 was originally assessed during L.B.'s intake at Community Council Health Systems in May 2012 and appears to have never been revisited.   The score is listed in the "Diagnosis" section of seven (7) more notations, five (5) of which indicate the diagnosis had a "Date Created" of May 15, 2012, and all of which were prefaced by the identical Axis diagnoses, suggesting the score was simply cut and pasted into each treatment note.[24]   No doctor ever discussed the basis for these GAF scores, meaning they did not "provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis."[25]   Given the absence of a clear basis for these GAF scores, these scores cannot, by themselves, constitute substantial weight for the ALJ's rejection of Dr. Hardas's medical assessment.

The last cited reason for the ALJ's finding in the attending and completing tasks domain is L.B.'s school functioning.   Two problems plague this assessment.   First, the records from L.B.'s therapeutic support specialist ("TSS") worker evidence routine observations of L.B. having difficulty concentrating in school.   The TSS worker commented L.B. was playful to avoid academic work,[26] daydreamed and ignored teacher prompts in class with difficulty being redirected,[27] would not comply with the teacher's request to stay still in class and listen,[28] exhibited noncompliant and playful behavior in class,[29] misbehaved in the class setting to avoid academic work,[30] was oppositional towards the teacher,[31] had difficulty following the teacher's directive,[32] was agitated and singing in class,[33] and was noncompliant with the teacher.[34]   The ALJ gave only a cursory nod to these notations without acknowledging their reflection of multiple limitations in L.B.'s attending and completing tasks functioning.

To the extent the ALJ found L.B.'s ADHD symptoms improved over time, the ALJ failed to consider the role of Plaintiff's therapeutic school services in such improvement. Under the Social Security Rulings, a child who "needs a person, . . . treatment, device, or structured, supportive setting to make his functioning possible or improve the functioning . . . . has a limitation, even if he is functioning well with the help or support."[35] As such, the regulations require the Commissioner to compare the child's functioning to same-age, unimpaired children, and consider the impact of structured or supportive settings on the child's ability to sustain adequate functioning.[36] "The ALJ is required to address evidence which supports an inference that the claimant's behavioral improvement is a result of his supportive environment, and not a result of actual progress in the child's underlying disability."[37] "A finding of 'less than marked' is unsupported by substantial evidence when the ALJ fails to consider that the child's improvements in behavior occurred only in the structured special education setting."[38]

The ALJ acknowledged L.B.'s receipt of individual therapy sessions in 2013 during school hours through Community Council, but then cited to L.B.'s "cooperation" *during therapy*, and "engagement" *in therapy* as a basis for L.B.'s less than marked limitation in Attending and Completing Tasks. The ALJ also isolated a Clinical Treatment Plan note of March 27, 2013, where the therapist indicated L.B.'s behavior *in therapy* had improved "with a decrease of hyperactivity," yet failed to continue citing from the same record where the therapist noted "he needs to do better in class setting" and his teacher constantly complained about his lack of focus.[39] At no point did the ALJ discuss whether L.B. was similarly cooperative and engaged in a regular classroom setting, and to what extent his improvement resulted from the TSS worker's involvement. The TSS worker's subsequent notes evidence L.B. continued his off-task and

non-compliant behavior in the school setting, despite additional assistance.[40]  Absent some discussion and findings regarding whether L.B.'s ability to perform in school is predicated on therapeutic support not given to same-age, unimpaired children, we cannot affirm the ALJ's less than marked limitation in this domain.

### III.   Conclusion

The ALJ's finding of a less than marked limitation in attending and completing tasks stands unsupported by substantial evidence of record.  The ALJ relied on (a) cursory comments that L.B. played video games; (b) unexplained GAF scores; and (c) a record of noncompliance in school despite receipt of therapeutic services during school hours.  This reasoning is not based on "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[41]  In the accompanying Order, we remand to the Commissioner for a more complete evaluation of the evidence relating to the limitation in attending and completing tasks and, after completing this evaluation, whether L.B. is entitled to disability benefits.

---

1.  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000).

2.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988)).

3.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

4.  *Id.* at 1190–91; *see also Gilmore v. Barnhart*, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'") (quoting *Schwartz v. Halter*, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

5.  *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

6.  28 U.S.C. § 636(b)(1); *see also Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).

7.   28 U.S.C. § 636(b)(1).

8.   *See United v. Raddatz,* 447 U.S. 667, 676 (1980).   The Report and Recommendation properly summarizes the sequential evaluation process that the Commissioner must follow to determine childhood disability.   In addition, it sets forth an adequate recitation of the factual and procedural history in this case.   The Court incorporates by reference those portions of the Report and Recommendation into this Memorandum.

9.   20 C.F.R. § 416.926a(b)(1) and (d).

10.   20 C.F.R. § 416.926a(h)(1)(2)(iv).

11.   *Id.* § 416.926a(h)(1)(3).

12.   (R. 135 (citations omitted) (emphasis added).)

13.   The Commissioner contends the Plaintiff waived this issue before the Magistrate Judge. The Magistrate Judge's Report and Recommendation, however, explicitly noted Plaintiff's contention the ALJ erroneously relied upon L.B.'s use of video games in finding a less than marked limitation in the domain of attending and completing tasks.   (R & R 14.)

14.   (R. 480.)

15.   (R. 496.)

16.   (R. 156–57.)

17.   *Burnett v. Commissioner*, 220 F.3d 112, 125 (3d Cir. 2000).

18.   *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

19.   *Gilroy v. Astrue*, 351 F. App'x 714, 715 (3d Cir. 2009).

20.   *Hughes v. Comm'r of Soc. Sec.*, No. 15-2253, 2016 WL 231676, at *2 n.2 (3d Cir. Jan. 20, 2016).

21.   *Id.* (quoting SSA AM–13066 at 5 (July 13, 2013)).

22.   *Kroh v. Colvin*, No. 13-1533, 2014 WL 4384675, at *18 (M.D. Pa. Sept. 4, 2014) (quotations omitted).

23.   (R. 131–32.)

24.   (<u>See</u> R. 437 (October 16, 2012); R. 439 (November 13, 2012); R. 457–58 (January 15, 2013); R. 485 (April 15, 2013); and R. 500–01 (June 3, 2013).   Two of the notations from

November 12, 2012 and March 27, 2013 list the GAF score under a section of "DSM-IV Diagnosis," together with identical information regarding Plaintiff's diagnoses appearing in every other notation, but do not include a "date created."

25.   *Black*, 2015 WL 1746121, at *2.

26.   (R. 468).

27.   (R. 470.)

28.   (R. 478.)

29.   (R. 482.)

30.   (R. 488.)

31.   (R. 490.)

32.   (R. 494)

33.   (R. 502.)

34.   (R. 504.)

35.   SSR 09-01p.

36.   20 C.F.R. § 416.924a(b)(3), (b)(5); *see also Lugo v. Barnhart*, No. Civ.A.04-3914, 2005 WL 174844, at *2 (E.D. Pa. Jan. 21, 2005).

37.   *A.B. on behalf of Y.F. v. Colvin*, No. 15-2143, 2016 WL 614409, at *6 (D.N.J. Feb. 16, 2016).

38.   *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 147 (N.D.N.Y. 2012) (citations omitted).

39.   (R. 480.)

40.   The Magistrate Judge commented "the ALJ evaluated multiple sources who observed or provided clinical opinions concerning L.B.'s ability to function without 'extra help' from the TSS worker." (Report & Recommendation 7.) The cited "multiple sources", however, all reflect Plaintiff not functioning well in "attending and completing tasks" without extra help, including "(1) L.B.'s treating psychiatrist, Dr. Hardas, who noted that L.B. was 'restless and difficult to redirect,' but was 'redirectable' and responded well to Clonidine . . . (2) L.B.'s treatment providers at Community Council . . . who documented L.B's struggle with hyperactivity, impulsivity and defiant behavior . . . (3) Brown, who as L.B.'s mother and primary

caregiver, testified concerning L.B.'s symptoms while at home and while interacting with his siblings . . .; and (4) the testimony of L.B. himself . . ."   (<u>Id.</u> at 7.)

41.   *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quotations omitted).